**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| MICHAEL FRIEDMAN, individually, and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Case No. CIV-08-936-M |
| QUEST ENERGY PARTNERS LP, et al., ) ) | |
| Defendants. ) | |

| | |
|---|---|
| JAMES JENTS, individually, and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Case No. CIV-08-968-M |
| QUEST RESOURCE CORPORATION, et al., ) ) ) | |
| Defendants. ) | |

| | |
|---|---|
| PAUL ROSEN, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Case No. CIV-08-978-M |
| QUEST ENERGY PARTNERS LP, et al., ) ) | |
| Defendants. ) | |

| | |
|---|---|
| I. BRAXTON KYZER, et al.,   ) | |
|        ) | |
|     Plaintiffs,   ) | |
|        ) | |
| vs.   ) | Case No. CIV-08-1066-M |
|        ) | |
| QUEST ENERGY PARTNERS L.P., et al.,   ) | |
|        ) | |
|     Defendants.   ) | |

## ORDER

Before the Court are the Ord Group's[1] Motion to be Appointed Lead Plaintiffs and to Approve Proposed Lead Plaintiffs' Selection of Counsel, Bernard Rubin's ("Rubin") Motion for Appointment as Lead Plaintiff and for Approval of Selection of Lead and Liaison Counsel, the Barretti Group's[2] Motion to be Appointed Lead Plaintiff and to Approve Proposed Lead Plaintiff's Selection of Counsel, Bard Associates, Inc.'s ("Bard") Motion to be Appointed Lead Plaintiff and for Their Counsel to be Appointed as Lead Counsel and Liaison Counsel, and Robert Hayden and Jose Alvarado's ("Hayden and Alvarado") Motion for Appointment of Lead Plaintiff and Approval of Selection of Lead and Liaison Counsel.  These motions have been fully briefed and are ripe for adjudication.  Based upon the parties' submissions, the Court makes its determination.

I.    Background

Defendant Quest Resource Corporation ("Quest Resource") is engaged in the exploration, development, production and transportation of natural gas.  Quest Resource divides its operations into two reportable business segments: (1) gas and oil production, and (2) natural gas pipelines –

---

[1]The Ord Group consists of Barton Ord, Hakan Ozfenli, and Michael Wilson.

[2]The Barretti Group consists of Mark Barretti, Samuel Hyman, Leslie Sundquist, Billy Truitt, and Francis Biermeier.

transporting, selling, gathering, treating and processing natural gas. Defendant Quest Energy Partners, L.P. ("QELP") is the oil and gas production operation arm of its parent, Quest Resource. On August 25, 2008, the companies announced that defendant Jerry Cash ("Cash"), their CEO, had resigned following an inquiry by the Oklahoma Department of Securities in connection with questionable transfers of funds by Cash to an entity controlled by Cash. These questionable transfers totaled at least $10 million. As a result, the companies had announced that they constituted a special committee to conduct an internal investigation. This announcement shocked the market and caused QELP stock and Quest Resource stock to fall substantially.

      On September 5, 2008, a class action lawsuit was brought on behalf of the purchasers of the partnership units of QELP, which were sold in an initial public offering commencing on November 7, 2007 through August 25, 2008 (the "QELP Class"), seeking to recover damages caused by alleged violations of federal securities laws and to pursue remedies under the Securities Act of 1933. On September 12, 2008, a second class action lawsuit was brought on behalf of the purchasers of Quest Resource stock from May 2, 2005 through August 25, 2008 (the "Quest Resource Class"), seeking to recover damages caused by alleged violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder and Section 20(a) of the Exchange Act. Two additional related actions brought on behalf of both QELP and Quest Resource securities purchasers were then filed. These four actions have since been consolidated.

II.     Discussion

    A.     Appointment of Lead Plaintiff

        1.     Procedural requirements

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") sets forth a detailed procedure for the selection of a lead plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 77z-1(a)(3); 15 U.S.C. § 78u-4(a)(3). First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 77z-1(a)(3)(A)(i); 15 U.S.C. § 78u-4(a)(3)(A)(i). Plaintiff in the first-filed QELP action published an early notice on Market Wire[3] on September 5, 2008. Plaintiff in the first-filed Quest Resource action published an early notice on Market Wire on September 12, 2008. Within 60 days after publication of the required notice, any member of the proposed class may file a motion with the court seeking to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 77z-1(a)(3)(A),(B); 15 U.S.C. § 78u-4(a)(3)(A),(B).

Next, under the PSLRA, the Court shall appoint as lead plaintiff the movant that the court determines to be the most capable of adequately representing the interests of class members. 15 U.S.C. § 77z-1(a)(3)(B)(i); 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining who is the "most adequate plaintiff," the act provides that:

---

[3]Market Wire is a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *See, e.g., Meyer v. Paradign Med. Indus.*, 225 F.R.D. 678, 680 (D. Utah 2004).

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that –
>
> (aa)  has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb)  in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). That presumption may only be rebutted in very limited circumstances by proof by a member of the purported class that the presumptively most adequate plaintiff:

> (aa)  will not fairly and adequately protect the interests of the class; or
>
> (bb)  is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

      2.    <u>One lead plaintiff for both classes vs. separate lead plaintiffs for each class</u>

Hayden and Alvarado and Bard seek appointment as lead plaintiff for both classes; the Ord Group, the Barretti Group, and Rubin, however, seek appointment as lead plaintiff for only one of the classes. Additionally, in his motion, Rubin moves the Court to select a separate lead plaintiff for the QELP Class and the Quest Resource Class. The Court, therefore, must initially determine whether it is appropriate to appoint one lead plaintiff for both classes or separate lead plaintiffs for each class.

Having carefully reviewed the parties' submissions, the Court finds that it should appoint separate and independent lead plaintiffs to represent the two separate classes. As set forth above, the lead plaintiff must satisfy the requirements of Rule 23. One of those requirements is that the lead plaintiff must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy, for purposes of the lead plaintiff determination, is contingent upon both the existence of common interests between the proposed lead plaintiffs and the class, and a willingness on the part of the proposed lead plaintiff to vigorously prosecute the action." *In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206, 219 (D.N.J. 1999). Because the QELP Class and the Quest Resource Class differ in several critical respects, the Court finds that a single lead plaintiff could not meet the adequacy requirement and thereby would be precluded from representing both classes.

Specifically, the Court finds there is a conflict between the QELP Class and the Quest Resource Class in that both of these classes are competing for recovery from a common set of defendants whose assets constitute the single limited fund from which the competing classes will obtain recovery. The Quest Resource Class seeks to recover from defendants Quest Resource and its executives Jerry Cash, David Grose, and John Garrison for violations of § 10(b) and § 20(a) of the Exchange Act. The QELP Class seeks to recover from defendants QELP, its general partner Quest Energy GP LLC, its executives Jerry Cash and David Grose, and Quest Resource. Because its stock price has dropped approximately 99% from its class period high and having substantially more debt than its current cash balance, the Court finds that Quest Resource is unlikely to be able to provide a complete recovery for either class. QELP is in only a slightly better financial position to satisfy either class' claims. Further, the Court finds none of the individual defendants will be able to make both classes whole. As a result, both the QELP Class and the Quest Resource Class are

competing for the same limited funds for their recovery. As a result, a single lead plaintiff will be unable to have undivided loyalties to vigorously pursue recovery on behalf of both classes due to the inherent conflict that is caused by the competition for the same limited funds for recovery. *See Kuper v. Quantum Chem. Corp.*, 145 F.R.D. 80, 83 (S.D. Ohio 1992) (finding that competing claims from common pool of assets may impair representative's ability to vigorously pursue interests of both classes).

Additionally, the Court would note that this competition is exacerbated by the fact that Quest Resource is a defendant in the claims on behalf of the QELP Class but QELP is not a defendant in the claims on behalf of the Quest Resource Class. Further exacerbating the conflict is the fact that the QELP Class seeks rescission, a remedy available under § 11 of the Securities Act, which is not available to the Quest Resource Class. If rescission were granted, the Court finds this would have a debilitating effect on Quest Resource, the seller of the securities in the QELP public offering, which would result in a conflict between the Quest Resource Class, whose ability to recover would be significantly diminished as a result of rescission, and the QELP Class, which maximizes its recovery through rescission.

The Court further finds that separate and independent lead plaintiffs should be appointed because a single lead plaintiff also likely could not meet the typicality requirement of Rule 23. Typicality exists where "the claims ... of the representative parties" are "typical of the claims ... of the class." Rule 23(a)(3). Specifically, the Court finds the nature of the claims asserted by the two classes are materially different. The QELP Class claims arise out of material misstatements in a single document – QELP's Registration Statement filed with the Securities and Exchange Commission on October 31, 2007, which became effective on November 7, 2007. In contrast, the

claims of the Quest Resource Class span more than three years. Additionally, the claims of the QELP Class arise exclusively pursuant to the Securities Act with respect to which no scienter or reliance need be alleged or proven. In contrast, the claims asserted on behalf of the Quest Resource Class require the pleading of scienter in accordance with the stringent pleading requirements of the PSLRA. Similarly, in order for purchasers of Quest Resource stock to obtain class certification, they will have to establish through expert testimony the existence of an efficient market with respect to Quest Resource common stock, a matter which defendants will likely dispute.

Accordingly, for these reasons, the Court finds that separate lead plaintiffs should be appointed for the Quest Resource Class and the QELP Class.

### 3.     Lead plaintiff for Quest Resource Class

On November 4, 2008, within sixty days following the date of the early notice, lead plaintiff motions were filed by the following individuals or groups seeking to be appointed lead plaintiff for the Quest Resource Class: Bard, the Ord Group, and Hayden and Alvarado. Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the early notice, the Court finds Bard, the Ord Group, and Hayden and Alvarado timely moved this Court to be appointed lead plaintiff and, thus, satisfied the first requirement of the statutory test for determining the presumptive "most adequate plaintiff."

Bard asserts that it has the largest financial interest in the relief sought by the Quest Resource Class. The Ord Group, however, contends that Bard lacks standing to sue for its clients' losses, that Bard has no financial interest in this litigation, and that Bard is not a member of the Quest Resource Class.

"A fundamental requirement of representatives in a class action is that they must be members of the subclasses they seek to represent. The representatives must possess the same interest and suffer the same injury as their fellow class members." *Roby v. St. Louis Sw. Ry. Co.*, 775 F.2d 959, 961 (8th Cir. 1985). Further, a plaintiff who lacks standing is not a member of the class. *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 436 (8th Cir. 1999).

In *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008), a Second Circuit case which this Court finds persuasive, the Second Circuit, relying on *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 128 S. Ct. 2531 (2008), held that to have Article III constitutional standing to sue for its clients' losses, an investment advisor, such as Bard in the instant action, must submit evidence that its clients have "transferred ownership of, or title to, their claims to [it]." *Huff*, 549 F.3d at 109. It is undisputed that at the time Bard filed its motion to be appointed lead plaintiff that its clients had not transferred ownership of, or title to, their claims to Bard. It was not until June 2009 that Bard's clients assigned their claims to Bard. *See* Exhibit A to the Supplemental Declaration of Tim Johnson in Support of Bard Associates, Inc.'s Motion to be Appointed Lead Plaintiff and for Its Counsel to be Appointed as Lead Counsel and Liaison Counsel.

Bard asserts that since its clients' claims have now been assigned to it, any lack of standing when it filed its motion to be appointed lead plaintiff does not preclude it from now being appointed lead plaintiff. However, due to the strict time limits set forth in the PSLRA for filing motions for appointment as lead plaintiff, the Court finds that the assignments of claims which occurred after the filing of the motion to be appointed lead plaintiff cannot be considered. "The PSLRA is unequivocal and allows for no exceptions. All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action." *In re Telxon Corp. Sec. Litig.*, 67 F.

Supp. 2d 803, 818 (N.D. Ohio 1999). The plain language of the statute precludes consideration of any supplemental information filed after the sixty day window has closed. *Id.* "[S]upplementation after the expiration of the sixty (60) day period would not only be inconsistent with the language and purposes of the PSLRA, but would effectively nullify the time limits expressly provided therein." *Id.* at 819.

Accordingly, because Bard had not been assigned its clients' claims at the time it filed its motion to be appointed lead plaintiff, the Court finds that Bard did not have standing at the time it filed its motion and, thus, was not a member of the class, and it had no financial interest in the relief sought by the class at the time it filed its motion. The Court, therefore, finds that Bard can not be appointed lead plaintiff of the Quest Resource Class.

Of the two remaining movants, the Ord Group has the largest financial interest.[4] Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Of the four prerequisites, only two – typicality and adequacy – directly address the personal characteristics of the class representative and, thus, typicality and adequacy are

---

[4] The Ord Group has losses exceeding $146,000, and Hayden and Alvarado have losses exceeding $48,000.

the only relevant prerequisites to lead plaintiff selection under the PSLRA. *See In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

Under Rule 23(a)(3), typicality exists where "the claim . . . of the representative parties" are "typical of the claims . . . of the class." Typicality is satisfied when the representative plaintiffs' claims arise from the same event, practice or course of conduct that provides the basis of class claims and are grounded in the same legal or remedial theory. *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988). Typicality does not require that every class member's claim be identical to those of the representative plaintiffs. *Anderson v. City of Albuquerque*, 690 F.2d 796, 800 (10th Cir. 1982).

Having carefully reviewed the parties' submissions, the Court finds that the Ord Group satisfies the typicality requirement of Rule 23. Specifically, the Court finds that the Ord Group's claims are identical, non-competing and non-conflicting with the claims of the other members of the Quest Resource Class. The Ord Group, like the other members of the Quest Resource Class, (1) purchased Quest Resource securities during the class period, (2) purchased Quest Resource units at allegedly artificially-inflated prices as a result of defendants' alleged misrepresentations and omissions, and (3) suffered damages thereby.

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interest of the class." As set forth above, "[a]dequacy, for purposes of the lead plaintiff determination, is contingent upon both the existence of common interests between the proposed lead plaintiffs and the class, and a willingness on the part of the proposed lead plaintiff to vigorously prosecute the action." *In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206, 219 (D.N.J. 1999).

Having carefully reviewed the parties' submissions, the Court finds that the Ord Group satisfies the adequacy requirement. Specifically, the Court finds that the Ord Group's interests are clearly aligned with the members of the Quest Resource Class because its claims are identical to the claims of the class. Further, the Court finds there is no evidence of antagonism between its interests and those of the proposed class members. Additionally, the Court finds that the Ord Group has a significant, compelling interest in prosecuting this action to a successful conclusion based upon the very large financial loss it incurred as a result of the alleged wrongful conduct and has shown a willingness to vigorously prosecute this action.

Because it has the largest financial interest in the relief sought by the Quest Resource Class and because it satisfies both the typicality and adequacy requirements, the Court finds that the Ord Group is presumptively the "most adequate plaintiff." The Court, therefore, must now determine whether this presumption has been rebutted by proof that the Ord Group will not fairly and adequately protect the interests of the class or is subject to unique defenses that render it incapable of adequately representing the class.

It has been asserted that the Ord Group is not an appropriate lead plaintiff because it is an improper group, consisting of a group of investors who have no apparent relationship to each other. The plain language of the PSLRA allows for the appointment of more than one plaintiff as lead plaintiff. The statute provides for the appointment as lead plaintiff of "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members." 15 U.S.C. § 77z-1(a)(3)(B)(i); 15 U.S.C. § 78u-4(a)(3)(B)(i). The statute also directs courts to treat as the presumptive lead plaintiff the "person or group of

persons" that meet the criteria specified in the statute. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Courts have adopted different interpretations of that language, diverging with respect to whether the PSLRA allows for multiple plaintiffs to be appointed as lead plaintiff. Some courts refuse to permit aggregation or allow very limited aggregation; some courts allow aggregation only among previously related individuals; some courts permit all possible aggregation.

> The courts that limit aggregation to only those previously related reason that the content and structure of the [PSLRA] evince an intent that the group consist of more than a mere assemblage of unrelated persons who share nothing in common other than the twin fortuities that (1) they suffered losses and (2) they entered into retainer agreements with the same attorney or attorneys. The courts that permit absolute aggregation assert that the PSLRA does not require that the lead plaintiffs be related and follow the line of reasoning that while the assertion can legitimately be made that the larger the number of proposed lead plaintiffs, the greater the dilution of the control that those plaintiffs can maintain over the conduct of the putative class action, an equally cogent assertion can be broached that, when more greatly numbered, the lead plaintiffs can more effectively withstand any supposed effort by class counsel to seize control of the class claims.

*Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 503 (S.D. Fla. 2002). Further, there is no case law from the majority of the circuits regarding the issue of aggregation for purposes of lead plaintiff. The Third Circuit, however, has specifically endorsed aggregation stating that the PSLRA "contains no requirement mandating that the members of a proper group be 'related' in some manner; it requires only that any such group 'fairly and adequately protect the interests of the class.'" *In re Cendant Corp. Lit.*, 264 F.3d 201, 266-67 (3d Cir. 2001).

Having carefully reviewed the parties' submissions and the relevant case law, the Court adopts the reasoning of the Third Circuit and finds that aggregation of unrelated individuals is

acceptable for the purposes of lead plaintiff in private securities litigation. The PSLRA specifically allows for a group of persons to serve as lead plaintiff, and there is no requirement contained within the PSLRA that the group of persons serving as lead plaintiff have a relationship among themselves. Instead, the PSLRA focuses on whether the person or group that is the proposed lead plaintiff can fairly and adequately serve as the lead plaintiff.

Based upon the parties' submissions, the Court finds that the Ord Group can fairly and adequately serve as the lead plaintiff. Additionally, with only three lead plaintiff parties, the Ord Group is small enough that coordinated decision making will not present any difficulties. Finally, the Court finds no proof that the Ord Group is subject to unique defenses that render it incapable of adequately representing the class. Accordingly, the Court finds that the Ord Group should be appointed lead plaintiff.

### 4. Lead plaintiff for QELP Class

On November 4, 2008, within sixty days following the date of the early notice, lead plaintiff motions were filed by the following individuals or groups seeking to be appointed lead plaintiff for the QELP Class: Bard, the Barretti Group, Rubin, and Hayden and Alvarado. Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the early notice, the Court finds Bard, the Barretti Group, Rubin, and Hayden and Alvarado timely moved this Court to be appointed lead plaintiff and, thus, satisfied the first requirement of the statutory test for determining the presumptive "most adequate plaintiff."

Regarding the second requirement, the movants have the following financial interest in the relief sought by the QELP Class: (1) Bard has no loss and, thus, no financial interest; (2) the Barretti Group has losses exceeding $269,000; (3) Rubin has losses exceeding $145,000; and (4) Hayden

14

and Alvarado have losses exceeding $3,000. The Court, thus, finds that the Barretti Group has the largest financial interest in the relief sought by the QELP Class.

Further, having carefully reviewed the parties' submissions, the Court finds that the Barretti Group satisfies the typicality requirement of Rule 23. Specifically, the Court finds that the Barretti Group's claims are identical, non-competing and non-conflicting with the claims of the other members of the QELP Class. The Barretti Group, like the other members of the QELP Class, (1) purchased QELP units during the class period, (2) purchased QELP units at allegedly artificially-inflated prices as a result of defendants' alleged misrepresentations and omissions, and (3) suffered damages thereby.

Additionally, the Court finds that the Barretti Group satisfies the adequacy requirement. Specifically, the Court finds that the Barretti Group's interests are clearly aligned with the members of the QELP Class because its claims are identical to the claims of the class. Further, the Court finds there is no evidence of antagonism between its interests and those of the proposed class members. Additionally, the Court finds that the Barretti Group has a significant, compelling interest in prosecuting this action to a successful conclusion based upon the very large financial loss it incurred as a result of the alleged wrongful conduct and has shown a willingness to vigorously prosecute this action.

Because it has the largest financial interest in the relief sought by the QELP Class and because it satisfies both the typicality and adequacy requirements, the Court finds that the Barretti Group is presumptively the "most adequate plaintiff." The Court, therefore, must now determine whether this presumption has been rebutted by proof that the Barretti Group will not fairly and

adequately protect the interests of the class or is subject to unique defenses that render it incapable of adequately representing the class.

As it was with the Ord Group, it has also been asserted that the Barretti Group is not an appropriate lead plaintiff because it is an improper group, consisting of a group of investors who have no apparent relationship to each other.  As set forth above, the PSLRA specifically allows for a group of persons to serve as lead plaintiff, and there is no requirement contained within the PSLRA that the group of persons serving as lead plaintiff have a relationship among themselves. The Court, therefore, finds the fact that the Barretti Group consists of five individual investors who have no relationship with one another does not preclude the Barretti Group from being appointed lead plaintiff for the QELP Class.

Additionally, Rubin contends that the Barretti Group submitted certifications that are defective and incomplete.  Having carefully reviewed the certifications, the Court finds that the alleged errors are not significant enough proof that the Barretti Group will not fairly and adequately protect the interests of the QELP Class to rebut the presumption that the Barretti Group is the "most adequate plaintiff."[5]

Finally, based upon the parties' submissions, the Court finds that the Barretti Group can fairly and adequately serve as the lead plaintiff.  With only five lead plaintiff parties, the Barretti Group is small enough that coordinated decision making will not present any difficulties.  Finally, the Court finds no proof that the Barretti Group is subject to unique defenses that render it incapable

---

[5] On December 17, 2008, Rubin filed a Motion to Strike the Barretti Group's Reply Declarations or, Alternatively, to be Permitted to File a Surreply Memorandum.  Because the Court has not considered said declarations in making its determination, the Court finds that Rubin's motion to strike should be denied as moot.

of adequately representing the class. Accordingly, the Court finds that the Barretti Group should be appointed lead plaintiff.

### 5. Approval of lead counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class, subject to the Court's approval. *See* 15 U.S.C. § 77z-1(a)(3)(B)(v); 15 U.S.C. § 78u-4(a)(3)(B)(v). A court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Both the Ord Group and the Barretti Group have selected Federman & Sherwood and the Rosen Law Firm, P.A. to serve as co-lead counsel. While the Court finds that both of these law firms are highly experienced in prosecuting securities class actions and are qualified to serve as lead counsel, the Court finds that the interests of the Quest Resource Class and the QELP Class would not be protected if Federman & Sherwood and the Rosen Law Firm, P.A. were approved to serve as co-lead counsel for both the Quest Resource Class and the QELP Class. As set forth above, there is a conflict between the Quest Resource Class and the QELP Class. Because of this conflict, the Court finds that there should be separate lead counsel for each class. The Court further finds, however, that because of their experience and qualifications, Federman & Sherwood and the Rosen Law Firm, P.A. are each capable of individually being lead counsel for one of the classes.

Accordingly, the Court approves the Ord Group's and the Barretti Group's selection of lead counsel as follows: the Court approves the selection of Federman & Sherwood as lead counsel for the QELP Class and the selection of the Rosen Law Firm, P.A. as lead counsel for the Quest Resource Class.

III.    Conclusion

For the reasons set forth above, the Court DENIES AS MOOT Rubin's Motion to Strike the Barretti Group's Reply Declarations or, Alternatively, to be Permitted to File a Surreply Memorandum, DENIES Rubin's Motion for Appointment as Lead Plaintiff and for Approval of Selection of Lead and Liaison Counsel, Bard's Motion to be Appointed Lead Plaintiff and for Their Counsel to be Appointed as Lead Counsel and Liaison Counsel, and Hayden and Alvarado's Motion for Appointment of Lead Plaintiff and Approval of Selection of Lead and Liaison Counsel, GRANTS the Ord Group's Motion to be Appointed Lead Plaintiffs and to Approve Proposed Lead Plaintiffs' Selection of Counsel and the Barretti Group's Motion to be Appointed Lead Plaintiff and to Approve Proposed Lead Plaintiff's Selection of Counsel, APPOINTS the Ord Group as lead plaintiff for the Quest Resource Class, APPOINTS the Barretti Group as lead plaintiff for the QELP Class, APPROVES the selection of the Rosen Law Firm, P.A. as lead counsel for the Quest Resource Class, and APPROVES the selection of Federman & Sherwood as lead counsel for the QELP Class.

**IT IS SO ORDERED this 24th day of September, 2009.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE