## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MICHAEL FRIEDMAN, individually and on behalf of all others similarly situated,** | ) ) ) | **CASE NO. 08-CV-936-M** |
| **Plaintiff,** | ) ) ) | |
| **vs.** | ) ) | **JUDGE VICKI MILES-LaGRANGE** |
| **QUEST ENERGY PARTNERS L.P., ET AL.,** | ) ) | |
| **Defendants.** | ) ) | |

## DEFENDANTS DAVID C. LAWLER AND QUEST RESOURCE CORPORATION'S OPENING MOTION TO DISMISS THE CONSOLIDATED COMPLAINT AND BRIEF IN SUPPORT

Paul R. Bessette
Michael J. Biles
Kimberly G. Davis
Royale M. Pence
Greenberg Traurig LLP
300 West 6th Street, Suite 2050
Austin, TX 78701-3911
Tel: 512.320.7200
Fax: 512.320.7210
bilesm@gtlaw.com

Michael E. Smith, OBA #8385
HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.
Chase Tower
100 North Broadway, Suite 2900
Oklahoma City, OK 73102-8865
Tel: 405.553.2828
Fax: 405.553.2855
mesmith@hallestill.com

## COUNSEL FOR DEFENDANTS DAVID C. LAWLER AND QUEST RESOURCE CORPORATION

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................. 1

II.     ADOPTION OF FACTS AND ARGUMENTS ..................................... 2

III.    RELEVANT FACTS .......................................................................... 2

        A.    The Quest Companies ............................................................. 2

        B.    David Lawler ......................................................................... 3

        C.    The Transfers Primarily Impacted QRC—not QELP ................ 3

IV.     ALLEGATIONS AGAINST LAWLER AND QRC .............................. 4

V.      PLAINTIFFS HAVE NOT ESTABLISHED A VIOLATION OF SECTION
        10(b) OR RULE 10b-5 AGAINST QRC OR LAWLER ......................... 5

        A.    Plaintiffs' "Puzzle-Style" Complaint Is Unclear and Must Be Dismissed ... 6

        B.    Plaintiffs Cannot Establish A Strong Inference of Scienter for QRC .......... 7

        C.    Plaintiffs Cannot Establish a Strong Inference of Scienter for Lawler ........ 8

              1.    Alleging Lawler's job titles is insufficient to raise a strong
                    inference of scienter. ..................................................... 9

              2.    That Lawler signed SEC filings is insufficient to establish a
                    strong inference of scienter. ........................................ 10

              3.    Plaintiffs fail to establish that Lawler acted recklessly. ............ 11

              4.    Lawler's lack of stock sales negate a strong inference of scienter. . 12

              5.    Plaintiffs' own allegations establish that Lawler did not act with
                    scienter. ..................................................................... 13

VI.     PLAINTIFFS HAVE NOT ESTABLISHED THAT LAWLER WAS A
        CONTROL PERSON ......................................................................... 14

        A.    Plaintiffs Have Failed to Plead a Primary 10(b) Violation .......... 15

        B.    Plaintiffs Have Failed to Plead that Lawler Controlled QELP ....... 15

VII.    CONCLUSION ................................................................................ 17

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Kinder-Morgan, Inc.*,
   340 F.3d 1083 (10th Cir. 2003) ........................................................ 5, 7, 9, 16

*Anderson v. First Security Corp.*,
   249 F. Supp. 2d 1256 (D. Utah 2002) ...........................................................11

*Andropolis v. Red Robin Gourmet Burgers, Inc.*,
   505 F. Supp. 2d 662 (D. Colo. 2007) ........................................................... 12

*City of Philadelphia v. Fleming Cos., Inc.*,
   264 F.3d 1245 (10th Cir. 2001) ........................................................... passim

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
   565 F.3d 200 (5th Cir. 2009) ........................................................................ 6

*In re Cendant Corp. Sec. Litig.*,
   109 F. Supp. 2d 225 (D.N.J. 2000) ............................................................... 8

*In re Northpoint Commc'ns Group, Inc. Sec. Litig.*,
   184 F. Supp. 2d 991 (N.D. Cal. 2001) ........................................................... 9

*In re Williams Sec. Litig.*,
   339 F. Supp. 2d 1242 (N.D. Okla. 2003) ....................................................... 7

*Inryco, Inc. v. CGR Bldg. Sys., Inc.*,
   780 F.2d 879 (10th Cir. 1986) ...................................................................... 8

*Lillard v. Stockton*,
   267 F. Supp. 2d 1081 (N.D. Okla. 2003) ....................................................... 6

*Maher v. Durango Metals, Inc.*,
   144 F.3d 1302 (10th Cir. 1998) .............................................................. 15, 16

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)....................................................................... 12

*Pugh v. Tribune Co.*,
   521 F.3d 686 (7th Cir. 2008) ........................................................................ 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) .............................................................................. 6, 14

*Vildaver v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   No. 94 C 3041, 1996 WL 165089 (N.D. Ill. Apr. 2, 1996)............................... 8

*Winer Family Trust v. Queen*,
   503 F.3d 319 (3d Cir. 2007)......................................................................... 6

**Statutes**

15 U.S.C. § 78t(a) ................................................................................. 15, 16

15 U.S.C. § 78u-4(b)(1) ............................................................................ 7

15 U.S.C. § 78u-4(b)(2) ............................................................................ 5

15 U.S.C. § 78u-4(b)(3) ............................................................................ 6

**Rules**

Federal Rule of Civil Procedure 9(b) ................................................ 1, 7, 17

Federal Rules of Civil Procedure 12(b)(6) ............................................. 1

Defendants David C. Lawler and Quest Resource Corporation ("QRC") move this Court to dismiss the Consolidated Complaint of Quest Energy Partners, L.P. Lead Plaintiff Group ("Complaint" or "Compl.") pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## I.    INTRODUCTION

QRC is the victim of the embezzlement of over $10 million by its two most senior executives, defendants Jerry Cash and David Grose.  Cash and Grose secreted funds from QRC over a four-year period by "kiting" checks at the beginning and end of each quarter, arranging kickbacks from a Quest vendor, and using QRC funds to make personal investments.  This embezzlement deprived QRC of funds necessary to continue its operations, which forced it to borrow additional amounts under its already stressed lines of credit, to spend millions investigating the embezzlement, and to restate its financial statements.  This crime has pushed QRC to the brink of bankruptcy.  Now, plaintiffs attempt to hold QRC liable for Cash's and Grose's misconduct when neither QRC nor any of its current officers or board members knew of the embezzlements or kickbacks or benefitted from them in any way.  Plaintiffs also try to hold liable the very person responsible for uncovering and investigating the embezzlement, David C. Lawler.

Neither QRC nor Lawler are liable for the fraud of Cash and Grose.  Plaintiffs have not established that QRC or Lawler knew (or were reckless in not knowing) of the embezzlements and kickbacks, an element required under section 10(b) of the Securities Exchange Act.  Nor have plaintiffs shown that Lawler controlled the day-to-day

operations of Quest Energy Partners, L.P. or had the power to control the alleged underlying transactions—the embezzlements and kickbacks—as required by section 20(a).

For these reasons, and others set forth below, plaintiffs have failed to state a claim against QRC or Lawler and their Complaint must be dismissed.

## II.    ADOPTION OF FACTS AND ARGUMENTS

Lawler and QRC incorporate by reference and adopt as if fully set forth herein the facts, legal standards and authority, and arguments applicable to them contained in the briefs supporting the motions to dismiss of defendants Quest Energy Partners, L.P., Quest Energy GP, LLC, Gary Pittman, and Mark Stansberry.

## III.    RELEVANT FACTS

### A.    The Quest Companies

QRC is an integrated independent energy company engaged in the acquisition, exploration, development, production, and transportation of oil and natural gas. (Defendants Quest Resource Corporation and David C. Lawler's Request for Judicial Notice in Support of Their Motion to Dismiss the Consolidated Complaint ("RJN") (Ex. 1 at 6.) QRC is based in Oklahoma City, Oklahoma. QRC wholly owns Quest Energy GP, LLC ("QEGP"), which is the general partner of Quest Energy Partners, L.P. ("QELP") (QRC, QEGP and QELP together are referred to as "Quest"), a publicly traded limited partnership. QRC also owns approximately 55.9% of QELP's partnership units. (*Id.*)

### B.    David Lawler

Prior to joining Quest in May 2007, Lawler worked at Shell Exploration & Production Company. (*Id.* Ex. 2 at 138.) Thus, Lawler was not associated with Quest for most of the time period of Cash's and Grose's misconduct. At the time of QELP's Initial Public Offering ("IPO") on November 7, 2007, Lawler was QEGP's Chief Operating Officer and served on the Board of Directors of QEGP. (*Id.*) He also served as the Chief Operating Officer of QRC. (*Id.*) Lawler served in these positions until August 2008, when he became President of both QRC and QEGP and joined QRC's board of directors, all to fill vacancies created by the resignation of Jerry Cash ("Cash"). (*Id.* Ex. 3 at 2.) Notably, Lawler is not a C.P.A. or accountant, nor is he alleged to have had any direct responsibility for QELP's financial controls or financial reporting during the class period.

### C.    The Transfers Primarily Impacted QRC—not QELP

The transfers of Quest funds to Cash's Rockport Energy account caused QRC to violate certain covenants in its credit agreement with Royal Bank of Canada and forced it to take out additional loans to fund its operations. (*Id.*) As of November 5, 2009, QRC had spent approximately $8 million in legal fees, accountant's fees, and other fees to investigate the transfers and restate its financial statements. (*Id.* Ex. 4 at 22.) Due in part to the additional indebtedness and expenditures caused by the transfers, QRC's auditors have expressed substantial doubt about its ability to continue as a going concern. (*Id.* at F-5.)

In contrast, Cash's and Grose's embezzlement had no material impact on QELP's financials. Although Quest Cherokee, QELP's predecessor entity, funded a portion of the

transfers to Cash's Rockport Energy Accounts, which caused it to take out additional

indebtedness, QRC repaid the additional indebtedness at the close of QELP's IPO.  (*Id.*

Ex. 6 at 5.)  Indeed, the transfers had no impact on QELP's net income in 2008 and a

relatively small impact in 2007.  (Compl. ¶¶ 130, 133.)

## IV.    ALLEGATIONS AGAINST LAWLER AND QRC

Plaintiffs' first claim alleges that QELP violated section 11 of the Securities Act by

filing a Registration Statement and Prospectus (collectively the "Prospectus") containing

misstatements and omissions.  (Compl. ¶ 185.)  Plaintiffs' second claim alleges that QRC

violated section 15 of the Securities Act by controlling QELP's dissemination of false and

incomplete statements and omissions contained in the Prospectus.  (*Id.* ¶ 201.)  Plaintiffs

allege that QRC did not reasonably investigate or reasonably believe that the statements

contained in the Prospectus were accurate and complete in all material respects.  (*Id.* ¶

202.)

Plaintiffs' third claim alleges that QRC and Lawler violated section 10(b) of the

Exchange Act and rule 10b-5 promulgated thereunder by making untrue statements of

material fact and omitting to state material facts about QELP's business operations and

financial condition.  (*Id.* ¶ 209.)  Essentially, the allegations are that nearly all of QELP's

public statements from November 7, 2007 to August 24, 2008 failed to disclose the

alleged related-party transactions with Cash and Grose and the resulting impact on

QELP's financial statements, and that there were material weaknesses in QELP's internal

controls.  Plaintiffs' fourth claim seeks to impose secondary liability on QRC and Lawler

through section 20(a) of the Exchange Act based on their alleged "control" of QELP.  (*Id.* ¶ 216.)

## V.    PLAINTIFFS HAVE NOT ESTABLISHED A VIOLATION OF SECTION 10(b) OR RULE 10b-5 AGAINST QRC OR LAWLER

The essential elements of a section 10(b) claim are: (1) the defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities; (3) the defendant acted with scienter, that is, with the intent to defraud or recklessness; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages as a result.  *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003).  As argued in briefs supporting the motions to dismiss of defendants Quest Energy Partners, L.P., Quest Energy GP, LLC, Gary Pittman, and Mark Stansberry, the Complaint fails to establish many of the essential elements of a section 10(b) claim.  This Motion will specifically address plaintiffs failure to establish that QRC or Lawler acted with scienter.

In 1995, Congress enacted the PSLRA which strengthened the standard for pleading the element of scienter.  It requires that "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a ***strong inference*** that ***the defendant*** acted with the ***required state of mind***."  15 U.S.C. § 78u-4(b)(2) (emphasis added); *Kinder-Morgan*, 340 F.3d at 1096.  The plain language of the statute requires that the strong inference of scienter be pled for *each* individual defendant.  In opinions after the enactment of the PSLRA, the majority of

courts have rejected so-called "group pleading" of scienter, and require plaintiffs to

establish scienter separately for each defendant.[1]  Therefore, plaintiffs must plead scienter

separately for both QRC and Lawler.

Allegations raise the "strong inference" of scienter "only if a reasonable person

would deem the inference of scienter cogent and at least as compelling as any opposing

inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights,*

*Ltd.*, 551 U.S. 308, 324 (2007).  Thus, a court must consider plausible, non-culpable

explanations for the defendant's conduct and find that "the inference of scienter [is] more

than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong

in light of other explanations." *Id*.  Otherwise, the PSLRA requires that the court dismiss

the complaint.  15 U.S.C. § 78u-4(b)(3).

### A.     Plaintiffs' "Puzzle-Style" Complaint Is Unclear and Must Be Dismissed

First, it is unclear whether plaintiffs allege section 10(b) violations against QRC

and Lawler.  Plaintiffs allege that their third claim is against all defendants for violations

of section 10(b) and rule 10b-5, but later contend that "All Defendants are sued *either* as

primary participants in the wrongful and illegal conduct charged herein *or* as controlling

persons or entities as alleged below." (Compl. ¶ 207 (emphasis added).)  In their fourth

claim, plaintiffs allege that QRC and Lawler are a controlling persons or entities of QELP

under section 20(a).  (*Id.* ¶ 216.)  Based on their statement in paragraph 207, it appears

---

[1] *See, e.g., Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d
200, 208 (5th Cir. 2009); *Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008); *Winer
Family Trust v. Queen*, 503 F.3d 319, 337 (3d Cir. 2007); *Lillard v. Stockton*, 267 F.
Supp. 2d 1081, 1094 (N.D. Okla. 2003).

that they are not alleging that QRC or Lawler are directly liable for section 10(b)

violations because they allege that QRC and Lawler are control persons or entities of

QELP. The heading accompanying their third claim (the section 10(b) claim), naming all

defendants, however, makes it unclear.

      This use of puzzle-style pleading does not satisfy the pleading requirements of the

PSLRA or Federal Rule of Civil Procedure 9(b), and for this reason alone, any direct

claim that QRC or Lawler violated section 10(b) must be dismissed. 15 U.S.C. § 78u-

4(b)(1) (requiring particularity in pleadings alleging violations of the Exchange Act of

1934); *See In re Williams Sec. Litig.*, 339 F. Supp. 2d 1242, 1261 (N.D. Okla. 2003) (a

complaint contains "puzzle-style" pleading if one cannot discern what causes of action

are asserted against each defendant and the alleged factual basis for each of the causes of

action); *City of Philadelphia v. Fleming Cos., Inc.*, 264 F.3d 1245, 1255 (10th Cir. 2001)

(conclusory allegations are not sufficient under rule 9(b) or the PSLRA).

     **B.**     **Plaintiffs Cannot Establish A Strong Inference of Scienter for QRC**

      If indeed plaintiffs allege that QRC violated section 10(b), their claim must be

dismissed because they fail to plead a "strong inference" of scienter for QRC. While the

general rule is that "[t]he scienter of the senior controlling officers of a corporation may

be attributed to the corporation itself to establish liability as a primary violator of § 10(b)

and Rule 10b-5," this occurs only when "those senior officials were acting within the

scope of their apparent authority." *Kinder-Morgan*, 340 F.3d at 1106. The exception to

the general rule occurs when the senior official acts adversely to the corporation and for

his or her own benefit. *See Inryco, Inc. v. CGR Bldg. Sys., Inc.*, 780 F.2d 879, 883 (10th

Cir. 1986) (refusing to impute the knowledge of a company's agent to the company

because "[w]here, as here, the agent is found to have acted adversely to the principal, the

knowledge or notice acquired by such agent will not be imputed to his principal.").[2]

Plaintiffs cannot attribute the scienter of Cash or Grose to QRC because they were agents

who acted adversely to QRC and QELP's interests by embezzling corporate assets for

their own benefit. *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 225, 232 (D.N.J.

2000) ("misappropriation by corrupt officers of corporate funds for personal use [is] a

situation clearly involving adverse interests.")  QRC was the victim of Cash's and

Grose's misconduct—no benefit from the misconduct flowed to QRC.  Therefore, if

plaintiffs assert a section 10(b) claim against QRC, it must be dismissed.

### C.     Plaintiffs Cannot Establish a Strong Inference of Scienter for Lawler

If plaintiffs allege a section 10(b) claim against Lawler, their allegations are

insufficient to establish his scienter because they amount to no more than alleging his job

titles and that he signed a QELP public filing.  (Compl. ¶ 23, 72, 100.)  There is not one

fact alleged that plausibly suggests Lawler had any knowledge of Cash's and Grose's

misconduct or any of the other alleged misstatements.  For example, the Complaint does

not reference an internal Quest document or a witness that supports any claim that Lawler

knew or should have known about Cash's or Grose's improper transfers.

---

[2] *See also Vildaver v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 94 C 3041, 1996
WL 165089, at * 5 (N.D. Ill. Apr. 2, 1996) (dismissing section 10(b) claims against
defendant corporation, finding that a division manager "was acting for his own benefit
and adversely to the principal" and plaintiff's allegations were "not sufficient to cause
[defendant corporation] to be liable to anyone victimized by a maverick employee, acting
alone, contrary to [defendant corporation's] rules and without [defendant corporation]
even knowing of the maverick's misconduct.").

### 1.   Alleging Lawler's job titles is insufficient to raise a strong inference of scienter.

Plaintiffs group Lawler together with defendants Gary Pittman and Mark Stansberry and allege that as directors they "abandoned their oversight responsibilities." (*Id.* ¶ 72.) Plaintiffs allege that the board failed to fulfill their general fiduciary duties and responsibilities required of QEGP board and committee members. (*Id.* ¶¶ 72-74.)

Such conclusory allegations are wholly insufficient to raise a strong inference of scienter because they do not establish that Lawler either knew of the alleged fraud or had any motive to keep it undisclosed. The Tenth Circuit rejects arguments that because of a defendant's position in a company, he must have acted with the requisite scienter. *Kinder-Morgan*, 340 F.3d at 1106 (citing *Fleming*, 264 F.3d at 1263-64). Such allegations cannot establish that the defendant knew of the alleged fraud. *Kinder-Morgan*, 340 F.3d at 1107 ("[c]onclusory allegation about the involvement of 'senior management' does not amount a particularized claim that [a defendant]...knew about the false statement," and "are nothing more than 'generalized imputations of knowledge' and are not sufficient to establish scienter.").[3] Nor can such allegations establish that the defendant had a motive to keep the fraud concealed. *See Fleming*, 264 F.3d at 1269 (rejecting scienter allegations based on motives of executives to protect their positions,

---

[3] *See also In re Northpoint Commc'ns Group, Inc. Sec. Litig.*, 184 F. Supp. 2d 991, 1004 (N.D. Cal. 2001) (finding no scienter where plaintiff alleged that the defendants knew of deteriorating financial condition but issued public statements anticipating the benefits of a merger where the statements were "no more than a failure by defendants to fully anticipate the difficult times that would befall the Internet industry in late 2000").

compensation, or value of their stock because these are motives "shared by all company executives").

Not only have plaintiffs failed to establish Lawler's scienter by simply alleging that he was a member of QELP's board of directors, but they have also failed to allege that he was even responsible for overseeing QELP's accounting, financial reporting, audits, or disclosure drafting. Notably, Lawler is not an accountant or C.P.A. Although Lawler was on QEGP's board of directors, he was not on the audit committee, a disclosure committee, or a member of any other committee tasked with overseeing accounting, financial reporting, audits, or disclosure drafting. His position as COO also did not carry these responsibilities; he was responsible only for managing QELP's operations (*i.e.*, oil and gas drilling operations). Indeed, he did not even join Quest until July, 2007—towards the end of Cash's and Grose's fraudulent scheme. (Compl. ¶ 23.) Therefore, plaintiffs cannot establish Lawler's scienter by pleading that he was on QEGP's board of directors and was COO, because courts routinely reject such arguments, nor can they establish that he was responsible for the accounting and financial reporting that plaintiffs allege was incorrect, or the disclosures they allege were false and misleading.

### 2. That Lawler signed SEC filings is insufficient to establish a strong inference of scienter.

Plaintiffs allege that Lawler signed QELP's 2007 Form 10-K which contained false and misleading statements in violation of section 10(b). (Compl. ¶ 100.) But merely signing a public filing, without pleading specific facts establishing that the

defendant knew that the document contained false information, is insufficient to establish

scienter. *Anderson v. First Security Corp.*, 249 F. Supp. 2d 1256, 1270 (D. Utah 2002)

(citing *Fleming*, 264 F.3d at 1249-50).  Because plaintiffs have alleged no set of facts

establishing a strong inference that Lawler knew of the alleged fraud, his signing QELP's

public filings does not establish that he acted with an intent to defraud or deceive.

### 3.    Plaintiffs fail to establish that Lawler acted recklessly.

While severely reckless conduct may in some situations establish that a defendant

acted with scienter, the conduct must amount to "an ***extreme departure from the***

***standard of ordinary care***, and which presents a danger of misleading buyers or sellers

which is ***either known to the defendant or so obvious that the actor must have been***

***aware of it.***"  *Fleming*, 264 F.3d at 1258.  Plaintiffs plead no facts showing that Lawler

recklessly disregarded information that revealed Cash's and Grose's embezzlement.  They

simply allege that QELP directors must provide effective governance and oversight, but

"consciously disregarded" their duties.  (Compl. ¶¶ 73-74, 77.)  Plaintiffs fail to plead any

facts—*e.g.*, internal documents, witnesses or other red flags—supporting this conclusion,

and therefore cannot establish that Lawler acted recklessly.  At most plaintiffs have pled

"fraud by hindsight"—that simply because the complained-of transactions occurred,

Lawler must have been reckless.  (*Id.* ¶ 210.)  Pleading "fraud by hindsight" has been

rejected by the Tenth Circuit because it cannot support an inference of scienter.  *Fleming*,

264 F.3d at 1260 ("Plaintiffs should not be allowed to proceed with allegations of 'fraud

by hindsight,' for example, because corporate officials should be liable for failing to

reveal only 'those material facts reasonably available to them.'") (citing *Novak v. Kasaks*,

216 F.3d 300, 309 (2d Cir. 2000)).

### 4.    Lawler's lack of stock sales negate a strong inference of scienter.

That Lawler sold no QRC stock negates an inference that he acted with scienter.

Indeed, on May 1, 2007, Lawler acquired 90,000 shares of QRC restricted common stock

and 15,000 shares of QRC common stock. (RJN Ex. 5.)  He did not dispose of any QRC

stock during the class period.[4]  Although failure to allege that a defendant had a motive

and opportunity to benefit from the purported fraud by engaging in insider trading is not

fatal to a section 10(b) claim, in the Tenth Circuit courts look at the "totality of the

pleadings" and lack of "motive and opportunity" is a factor weighing against the required

finding of a "strong inference" of scienter.  *Fleming*, 264 F.3d at 1261, 1270; *Andropolis*

*v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d 662, 678 (D. Colo. 2007) ("[T]he

inference of scienter in this case is particularly weak given that Plaintiff does not allege

inside stock sales intended to take advantage of Red Robin's purportedly intentional

inflation of earnings.").  Therefore, that Lawler sold no QRC stock further weakens

plaintiffs' already deficient scienter allegations.

---

[4] Lawler neither acquired nor disposed of QELP units during the class period.  However, QRC made very similar disclosures as QELP (excluding financial statements specific to each company), and this Complaint, as well as the *Jents* Complaint filed by the QRC Class, allege that QELP and QRC's disclosures were false and misleading for the same reasons. (*See* Jents Complaint 5:08-cv-00968-M, Dkt. No. 51.)  Therefore, Lawler's lack of QRC sales negate scienter as to the QELP disclosures.

    **5.**    **Plaintiffs' own allegations establish that Lawler did not act with scienter.**

Not only do plaintiffs' allegations fail to establish that Lawler acted with scienter, they show his *lack* of scienter. Plaintiffs allege that the transfers from Quest entities to Rockport Energy began in June and July of 2004. (Compl. ¶ 43.) They allege that Lawler did not begin to serve as COO until July 2007, a full three years after the transfers began. (*Id.* ¶ 23.) By the time Lawler joined QEGP in mid-2007, Cash and Grose had transferred funds back and forth between Quest entities and Rockport Energy for three years and had the opportunity to structure the transfers so they would remain undetectable by Lawler and other Quest management.

Plaintiffs description of how "the schemes unravel" also demonstrates that Lawler had no knowledge of the transfers prior to late July, 2008. Plaintiffs allege that in late July, 2008 a Quest vice president alerted Lawler that Rockport Energy had $10 million of Quest's cash. (*Id.* ¶ 66.) Immediately upon being alerted, Lawler questioned Cash and Grose, who assured Lawler that the transactions were legitimate and that the money would be paid back to Quest. (*Id.* ¶ 66.) Lawler was not satisfied by Cash's and Grose's explanations and contacted Quest's auditor, Murrell Hall. (*Id.* ) As a result of Lawler's questioning, Murrell Hall did its own investigation, and ultimately concluded that the transfers were nothing more than Cash "kiting" checks to use Quest funds to cover his own personal expenses. (*Id.* ¶ 67.) Lawler's investigation and questioning of Grose and Cash and alerting the auditors is not the behavior of someone who already knew about the scheme. It demonstrates that not only did he have no knowledge of the transfers, but

that when he found out about them he immediately launched an investigation leading to the alleged unraveling of the scheme. Thus, plaintiffs' own allegations raise a "cogent and compelling" inference that Lawler *did not* have an intent to defraud. *Tellabs*, 551 U.S. at 324.

Plaintiffs have failed to establish that Lawler acted with scienter by virtue of his position as director and COO of QEGP and because he signed an allegedly misleading Form 10-K. His lack of stock sales during the class period demonstrate that he had no motive and opportunity to profit from the alleged fraud. Plaintiffs' own allegations illustrate a plausible competing inference that Lawler had no knowledge of the alleged fraud until it was brought to his attention in late July of 2008. Weighing this plausible, non-culpable explanation against plaintiffs' allegations of scienter shows that the inference that Lawler acted with scienter is neither strong, cogent, nor compelling as required by the PSLRA, and that their section 10(b) allegations against him must be dismissed. *Id.* at 325.

## VI.    PLAINTIFFS HAVE NOT ESTABLISHED THAT LAWLER WAS A CONTROL PERSON

Plaintiffs' section 20(a) control person claim against Lawler must be dismissed because plaintiffs have failed to establish primary violations of section 10(b), have failed to establish that Lawler is a control person, and Lawler has an affirmative defense to liability.

### A.    Plaintiffs Have Failed to Plead a Primary 10(b) Violation

As discussed more fully in briefs supporting the motions to dismiss of defendants

Quest Energy Partners, L.P., and Quest Energy GP, LLC, plaintiffs have failed to

establish that QELP violated section 10(b).  Therefore, the section 20(a) claim against

Lawler must be dismissed because there is no primary violation.  *See* 15 U.S.C. § 78t(a);

*Fleming*, 264 F.3d at 1270-71 (concluding that because the district court properly

dismissed the claims for primary violations, the controlling person liability claims were

properly dismissed as well).

### B.    Plaintiffs Have Failed to Plead that Lawler Controlled QELP

To plead a section 20(a) violation, plaintiffs must establish that (1) Lawler

exercised control over the primary violator and (2) that Lawler possessed the power to

directly or indirectly control the specific transaction or activity upon which the primary

violation was predicated.  *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 n. 8 (10th

Cir. 1998) ("courts generally agree that the plaintiff need only show the power to control

the transaction underlying the alleged securities violation").  Even if plaintiff establishes

these two requirements, Lawler has an affirmative defense under section 20(a) if he acted

in good faith and did not directly or indirectly induce the act or acts constituting the

violation.  15 U.S.C. § 78t(a).

Plaintiffs have failed to show that Lawler exercised control over QELP.  They

have only pled his job titles—member of the board of directors and COO—which,

"without any allegation that the person individually exerted control or influence over the

day-to-day operations of the company, does not suffice to support an allegation that the

person is a control person within the meaning of the Exchange Act." *Kinder-Morgan*, 340 F.3d at 1108. Plaintiffs have not alleged whether or how Lawler controlled the day-to-day operation of QELP, and have not established that Lawler is a control person by virtue of his job titles.

More importantly, plaintiffs have failed to plead any set of facts that would indicate that Lawler had the power to control the transactions underlying the primary violation—Cash and Grose's alleged transfers and kickbacks and the resulting financial misstatements. *See Durango Metals, Inc.*, 144 F.3d at 1305 n. 8 (courts require that the plaintiff show the defendant had the power to control the underlying violation). As COO and board member, Lawler did not hold a position that would allow him to have access to QELP's bank accounts, or the power to transfer funds from them to Cash's Rockport Energy accounts. Nor do plaintiffs allege that Lawler's positions allowed him to divert equipment purchases to the vendor that allegedly provided kickbacks to Grose, or to wire payments to vendors and direct that they be refunded to non-Quest entities. (*See* Compl. ¶ 55-56.) Significantly, Lawler did not hold a position in the accounting department that would allow him to misstate QELP's financials to cover those funds allegedly misappropriated from QELP. Therefore, plaintiffs have failed to allege that Lawler is a control person and their section 20(a) claim against him must be dismissed.

Even if plaintiffs have sufficiently alleged that Lawler had the requisite control over QELP and over the transactions that constitute the underlying violation, he is not liable because the section 20(a) affirmative defense, requiring good faith and no direct or indirect inducement of the act constituting the violation, applies. *See* 15 U.S.C. § 78t(a).

16

Lawler's good faith is evidenced by plaintiffs' own allegations—he investigated the transfers immediately upon first learning about them, as described more fully in section V(B)(3) above. (*See* Compl. ¶¶ 66, 67.) Not only does his investigation into the transfers show that he did not know about them, but it also demonstrates that upon learning of *any* indication of a violation of standard corporate practice, Lawler made a good faith effort to investigate. That he was appointed president of QRC and QELP after Cash resigned demonstrates the confidence other QRC and QELP managers and board members had in Lawler. (*See* RJN Ex. 3 at 2.) Furthermore, that Lawler has not been investigated by or named in any action by the numerous government entities that have been privy to results of the internal investigation demonstrates that he did not directly or indirectly induce the act or acts constituting the violation. (*See* Dkt. No. 104 at 1-5.) The section 20(a) affirmative defense therefore applies, and Lawler cannot be held liable for a violation of section 20(a).

## VII.   CONCLUSION

Plaintiffs' Complaint against defendants QRC and David Lawler falls well short of the stringent pleading requirements of the Tenth Circuit, the PSLRA and Federal Rule of Civil Procedure 9(b). The section 10(b) claims must be dismissed because the Complaint does not adequately allege that either QRC or Lawler had scienter. The section 20(a) claims against Lawler must be dismissed because there is no primary violation, Lawler did not control QELP or have the power to control the underlying transaction, and Lawler has an affirmative defense to liability. Plaintiffs have not properly stated causes of action

against QRC and Lawler and accordingly they move the Court to dismiss with prejudice

the Complaint against them.

Dated:  December 23, 2009

Respectfully submitted,

/s/ Michael J. Biles
Paul R. Bessette
Michael J. Biles
Kimberly G. Davis
Royale M. Pence
Greenberg Traurig LLP
300 West 6th Street, Suite 2050
Austin, TX  78701-3911
Tel:  512.320.7200
Fax:  512.320.7210
bilesm@gtlaw.com

Michael E. Smith, OBA #8385
HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.
Chase Tower
100 North Broadway, Suite 2900
Oklahoma City, OK  73102-8865
Tel:  405.553.2828
Fax: 405.553.2855
mesmith@hallestill.com

COUNSEL FOR DEFENDANT
QUEST RESOURCE CORPORATION
AND DAVID C. LAWLER

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2009, I electronically transmitted the attached document to the Clerk of Court using the CM/ECF system for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Anne M Rodgers    arodgers@fulbright.com, jbalderas@fulbright.com

Eric S Eissenstat    eeissenstat@fellerssnider.com, hscott@fellerssnider.com

Jason M Kreth    jmkreth@phillipsmurrah.com

Laurence M Rosen    lrosen@rosenlegal.com

Michael Burrage    mburrage@whittenburragelaw.com,
docketing@whittenburragelaw.com, rfitzgerald@whittenburragelaw.com

Michael E Smith    mesmith@hallestill.com, athacker@hallestill.com,
crisi@hallestill.com

Peter A Koller    kollerp@moss-barnett.com, weinstockd@moss-barnett.com

Philip J Young    youngp@moss-barnett.com, murphyb@moss-burnett.com

Phillip Kim    pkim@rosenlegal.com

R Michael Cole    mcole@legalok.com, info@legalok.com

Reggie N Whitten    rwhitten@whittenburragelaw.com,
docketing@whittenburragelaw.com, rfitzgerald@whittenburragelaw.com

Robert S Harrell    rharrell@fulbright.com, mcampbell@fulbright.com

Simone Gosnell Fulmer    sfulmer@whittenburragelaw.com,
docketing@whittenburragelaw.com, vtrammell@whittenburragelaw.com

Solomon B Cera    scera@gbcslaw.com, keg@gbcslaw.com

Stuart W Emmons    swe@federmanlaw.com, law@federmanlaw.com

Terese A West    westt@moss-barnett.com, colpittsc@moss-barnett.com

Thomas C Bright    tbright@gbcslaw.com

Thomas G Wolfe    ecf@phillipsmurrah.com, prbodine@phillipsmurrah.com, tgwolfe@phillipsmurrah.com

Thomas J Shroyer    shroyert@moss-barnett.com, weinstockd@moss-barnett.com

William B Federman    wbf@federmanlaw.com, law@federmanlaw.com, ngb@federmanlaw.com

I further certify that I do not know of any participants who are not registered participants of the ECF System.

/s/ Michael J. Biles

20